IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00309-WCM

JUSTIN ALAN SAMPSON,            )
                               )
                Plaintiff,     )
                               )       MEMORANDUM OPINION
v.                             )       AND ORDER
                               )
COMMISSIONER OF THE SOCIAL     )
SECURITY ADMINISTRATION,       )
                               )
                Defendant.     )
_____)

This matter is before the Court on the parties' cross motions for summary

judgment (Docs. 13, 15).[1]

## I.      Procedural Background

Plaintiff Justin Alan Sampson ("Plaintiff") filed applications for

disability insurance benefits and supplemental security income, alleging

disability beginning on February 1, 2018. Transcript of the Administrative

Record ("AR") 190-197; 198-207.

On January 3, 2020, following an administrative hearing at which

Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued

---

[1] The parties have consented to the disposition of this matter by a United States
Magistrate Judge. Doc. 12.

1

an unfavorable decision. AR 7-24. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "bipolar disorder, anxiety disorder, post-traumatic stress disorder ('PTSD'), and attention deficit hyperactivity disorder ('ADHD')." AR 12. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine tasks performed two hours at a time, but no fast-paced production rate work. He can have no interaction with the public and occasional interaction with coworkers, but cannot perform tandem tasks.

> AR 15.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 19-20.

## III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ erred in her consideration of certain opinion evidence, and when evaluating Plaintiff's subjective complaints.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff

3

is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law.  Id.

## V.    Discussion

### A. Consideration of Opinion Evidence and Prior Administrative Medical Findings

For applications filed on or after March 27, 2017, such as Plaintiff's, the Administration has changed how adjudicators assess medical opinions and prior administrative medical findings. See 82 Fed. Reg. 5844-01; 20 C.F.R. § 404.1520c(a)); 20 C.F.R. § 416.920c(a).[2] Specifically, an ALJ is now required to consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior administrative medical finding to be. 20 C.F.R. §§ 404.1520c(a)); 416.920c(a). In that regard, the regulations list numerous factors that are considered, as appropriate, with "supportability" and "consistency" being the most important. See 20 C.F.R. §§ 404.1520c(a) & (c); 416.920c(a) & (c). "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the

---

[2] The revised regulations define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…in your current claim based on their review of the evidence in your case record." See 20 C.F.R. §§ 404.1513(a)(5); 416.913(a)(5). Prior administrative medical findings include state agency consultant findings regarding the severity of a claimant's symptoms, whether a claimant's impairments meet or medically equal a listing, and a claimant's residual functional capacity. Id.

source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." <u>Bright v. Saul</u>, No. 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020).

Here, Plaintiff argues that the ALJ improperly rejected the opinion of his psychiatrist, Dr. Paul Keely, and instead relied on the findings of the state agency psychological consultants, Dr. Bonny Gregory and Dr. Sean Sayers.

### 1. Dr. Keely

In a November 25, 2019 Mental Residual Functional Capacity Questionnaire (the "Questionnaire," AR 581-583), Dr. Keely indicated that Plaintiff was "unable to meet competitive standards" in maintaining socially appropriate behavior or doing the mental tasks associated with unskilled work. AR 58-583. Dr. Keely additionally indicated that Plaintiff was "seriously limited" in his ability to interact appropriately with the public, travel in unfamiliar places, and use public transportation. AR 583. He also indicated that Plaintiff had "no useful ability to function" with respect to adhering to basic standards of neatness and cleanliness. <u>Id</u>. Finally, Dr. Keely noted that Plaintiff would be absent from work more than four days a month due to his impairments or treatment. <u>Id</u>.

The ALJ found Dr. Keely's opinion "not entirely persuasive." AR 18. In support of that conclusion, the ALJ cited treatment records reflecting that Plaintiff reported improvement of his symptoms with regular treatment;

Case 1:20-cv-00309-WCM   Document 18   Filed 02/03/22   Page 5 of 12

presented as neat, well-groomed, calm, pleasant, and cooperative; and reported traveling to Georgia and Virginia. See AR 18 (citing various treatment records including AR 301 (March 8, 2018 note reflecting Plaintiff was neat, cooperative and calm, and reported medication improved his concentration); AR 338 (June 15, 2018 record reflecting Plaintiff was calm, coherent, and pleasant); AR 442 (November 21, 2018 record reflecting Plaintiff presented with a pleasant affect and hoped to travel to Georgia to visit his brother); AR 448 (December 6, 2018 record wherein Plaintiff reported he had been able to manage his anger despite triggers during the week); AR 501 (April 10, 2019 record reflecting Plaintiff was dressed and well-groomed, and reported he was going out of town to Virginia for a couple of days)).

Plaintiff argues that Dr. Keely's own treatment notes, as well as the notes of other providers at Dr. Keely's clinic and other evidence in the record, provide ample support for Dr. Keely's opinions. Doc. 14 at 9-11 (citing treatment records wherein Plaintiff reported a history of anger and paranoid thinking, a history of suicide attempts and auditory hallucinations, mood swings and anxiety, and difficulty with concentration).

The substantial evidence standard, however, "'presupposes...a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite

6

Case 1:20-cv-00309-WCM   Document 18   Filed 02/03/22   Page 6 of 12

decision.'" <u>Dunn v. Colvin</u>, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting <u>Clarke v. Bowen</u>, 843 F.2d 271, 272-273 (8th Cir. 1988)). At the same time, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." <u>Lewis v. Berryhill</u>, 858 F.3d 858, 869 (4th Cir. 2017).

Here, the ALJ discussed evidence supporting her conclusions. Significantly, the ALJ also considered evidence arguably inconsistent with those conclusions. <u>See</u> AR 16-17 (discussing records reflecting Plaintiff's inpatient psychiatric treatment following his alleged disability onset date as well as records reflecting Plaintiff's depressed mood, impaired judgment, distractibility, worry, paranoia, and anger). The undersigned finds that the ALJ considered the relevant evidence, and that her reliance on treatment records indicating Plaintiff's improvement, presentation, and plans to travel provides sufficient support for her finding that Dr. Keely's opinion was not entirely persuasive. <u>See</u> <u>Petty v. Saul</u>, No. 1:19-cv-00012-FDW, 2020 WL 1441436, at *4 (W.D.N.C. March 20, 2020) ("The ALJ considered Dr. Ocloo's opinion in light of the rest of the record and decided it warranted 'some' weight. The ALJ provided substantial evidence for her weight determination; therefore, the Court will not disturb the ALJ's decision").

### 2. Dr. Gregory and Dr. Sayers

In formulating Plaintiff's RFC, the ALJ relied on the prior administrative medical findings of the state agency psychological examiners, Dr. Bonny Gregory (AR 61-65; AR 75-80) and Dr. Sean Sayers (AR 91-98; AR 108-115).

Dr. Gregory found that Plaintiff could understand and remember simple instructions, had the ability to maintain attention and concentration as required for the completion of simple tasks, and could accept instructions from supervisors and interact appropriately with coworkers and the public in settings with minimal interpersonal demands. AR 64-65; AR 78-79. Dr. Gregory concluded that Plaintiff had the ability to perform simple, routine, repetitive tasks in a low stress, limited production environment with limited social contact. Id.

Similarly, Dr. Sayers found that Plaintiff had the ability to understand and remember work procedures; could maintain concentration, persistence, and pace for two-hour periods of time when performing simple, routine, repetitive tasks at a non-production pace; could interact with supervisors and co-workers in a non-public setting; and could adapt in a stable non-stressful work environment. AR 97-98; AR 114-115.

The limitations included in Plaintiff's RFC appear to be consistent with the state agency consultants' findings and the rest of the record as analyzed by

8

the ALJ, and the ALJ's reliance on these findings when developing Plaintiff's RFC was appropriate. See Norton v. Saul, 1:20-cv-00060-KDB, 2021 WL 861710, at *3 (W.D.N.C. March 8, 2021); Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) (while "[a] 'non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted *by all of the other evidence in the record*[,]' 'the testimony of a nonexamining physician can be relied upon when it is consistent with the record.'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) (emphasis in Smith)); see also SSR 96-6p, 1996 WL 374180, at * 2 (July 2, 1996) (state agency consultants "are highly qualified ... physicians and psychologists who are experts in the evaluation of medical issues in disability claims...."); Stamey v. Berryhill, No. 1:18-cv-00062-FDW-DSC, 2019 WL 937331, at *3 (W.D.N.C. Feb. 26, 2019) (citing Settlemyre v. Colvin, No. 5:14–cv–00199–MOC, 2015 WL 5457950, at *4 (W.D.N.C. Sept. 16, 2015); Linares v. Colvin, No. 5:14-cv-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015)).

### B. Plaintiff's Subjective Complaints

In an Adult Function Report, Plaintiff reported that he had difficulty concentrating, and experienced problems with memory, anger, mood swings, suicidal thoughts, getting along with others, task completion, following instructions, and paranoia. AR 235-242; see also AR 39 & 47 (Plaintiff's

9

hearing testimony regarding anger issues and problems with concentration). The ALJ found that Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 16.

Plaintiff states that an ALJ has "substantial leeway" to determine the truthfulness of a claimant's subjective complaints, but he argues that the ALJ failed to explain sufficiently her decision to discount Plaintiff's reported symptoms here. See Doc. 14 at 17 (citing Lewis v. Colvin, No. CBD-11-1423, 2013 WL 6839505, at *5 (D. Md. Dec. 23, 2013)).

In evaluating the intensity, persistence and limiting effects of an individual's symptoms, an ALJ is to consider factors such as the individual's medical history, treatment history, and daily activities. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

Here, as noted above, the ALJ discussed Plaintiff's treatment history and acknowledged medical records that arguably could support greater limitations than those included in Plaintiff's RFC, as well as records reflecting Plaintiff's improvement with treatment. AR 16-17.

Additionally, the ALJ pointed to specific inconsistencies between Plaintiff's allegations regarding the severity of his mental symptoms and objective observations in Plaintiff's medical records. See AR 17 (citing medical records including AR 544 (July 26, 2019 record wherein Plaintiff stated he

10

didn't want to work at that time and would like to finish up a degree in art);
AR 573 (September 20, 2019 record wherein Plaintiff requested a letter from
Dr. Keely stating he is only able to work twenty hours a week)).

Plaintiff argues that the ALJ failed to recognize that he needed to be
reminded to take his medications and that he had difficulties obtaining his
medications after losing Medicaid benefits. Doc. 14 at 18. However, the ALJ
recognized that Plaintiff's "financial situation [was] not optimal," but noted
that there was no evidence that he had exhausted all resources available to
low-income individuals and that records indicated Plaintiff had received
assistance in paying for his medications. AR 17. The ALJ also acknowledged
records reflecting that Plaintiff had forgotten to take his medications despite
assistance from his treatment team in getting his medications refilled and
organizing his medication planner. AR 16.

Under these circumstances, the undersigned is not left to guess at the
foundations for the ALJ's conclusions and finds that the ALJ explained her
determination regarding Plaintiff's subjective complaints adequately. See
Brown v. Commissioner Social Security Administration, 873 F.3d 251, 269 (4th
Cir. 2017) ("the ALJ must build an accurate and logical bridge from the
evidence to his conclusion that [the claimant's] testimony was not credible")
(internal quotations and citations omitted).

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED**, the Commissioner's Motion for Summary Judgment (Doc. 15) is **GRANTED**, and this case is **DISMISSED**. The Clerk of Court is respectfully directed to enter a separate judgment in accordance with this Order, thereby closing the case.

Signed: February 3, 2022

W. Carleton Metcalf
United States Magistrate Judge